**E-FILED on**    1/5/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JEFFREY FIGUEROA,<br><br>        Petitioner,<br><br>    v.<br><br>CALIFORNIA SUPERIOR COURT OF CONTRA COSTA COUNTY JUVENILE DIVISION,<br><br>        Respondent. | No. C-04-03081 RMW<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY<br><br>**[Re Docket No. 1]** |

    Petitioner Jeffrey Figueroa ("Jeffrey") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims he is entitled to habeas corpus relief because: (1) he was denied his Sixth Amendment right to confrontation because the juvenile court improperly considered hearsay evidence; (2) he was denied his constitutional right to a jury trial; and (3) his convictions were not supported by sufficient evidence, violating his due process rights under the Fourteenth Amendment. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and denies the petition.

## I. BACKGROUND

On September 5, 2001, Nicholas T., a 14-year-old eighth grader at Walnut Creek Intermediate School, was in line with other students waiting to obtain a locker at the school gym. Reporter's Transcript (Pet'r's Ex. 1) ("RT") at 14-15. As the boys waited, petitioner's brother, Stephen Figueroa ("Stephen"), walked up and down the line, asking other boys whether they liked the Oakland Raiders. RT 16. If a boy said no, Stephen would strike the boy on the forehead. *Id.*

When Stephen got to Nicholas T. and asked him the same question, Nicholas T. said that he did not like the Raiders and that the Raiders "sucked." RT 33. Stephen hit Nicholas T. on the forehead and stomach and kicked his leg. RT 16. Nicholas T. called Stephen a "faggot." RT 33. Stephen walked away and started talking to his younger brother, Jeffrey. RT 28. Nicholas T. saw the two brothers pointing at him as they talked. *Id.* Shortly thereafter, Stephen and Jeffrey returned and stood next to Nicholas T. RT 58. Nicholas J., a classmate of Nicholas T.'s who was standing near Nicholas T. at the time of the incident, saw Jeffrey fashion a tinfoil object with his hands. RT 68-70. Jeffrey then tapped Nicholas T. on the shoulder and said, "Hey, kid." RT 17. When Nicholas T. turned to face him, Jeffrey spit the object out of his mouth and into Nicholas T.'s right eye. RT 39, 59-60. The object lodged in Nicholas T.'s eye, and when Nicholas T. pulled it out, he found a needle or a tack at the end of the tinfoil. RT 18-25. Nicholas T. cupped his injured eye with his hand while Stephen and Jeffrey laughed; Jeffrey ordered Nicholas T. not to tell the teacher. RT 59-61. Both Stephen and Jeffrey seemed happy that Jeffrey had struck Nicholas T. in the eye, and neither expressed any shock or disbelief that this had occurred. RT 63.

Ignoring Jeffrey's warning, Nicholas T. sought the aid of a teacher who told him to go to a bathroom and wash the eye out. RT 22. After school, Nicholas T.'s mother took him to a hospital where he was treated by Dr. Robert Edelman. RT 215-16. Nicholas T. had received a penetrating injury through the cornea, which caused the lens to split vertically. RT 216-20. Dr. Edelman testified that in his 23 years of practicing ophthalmology, he had never seen an injury so severe caused by paper or tin foil. RT 225. Dr. Edelman expressed doubt that a gum wrapper alone could have caused such a deep injury, and he speculated that something more firm likely had been wrapped inside of the wrapper. RT 229-32. Nicholas T. underwent two operations on his eye and

he testified that his vision continues to be blurry. RT 23. Nicholas T. also received a lens implant which helps him see at a distance. RT 233. Nonetheless, his vision will be permanently impaired. *Id.*

Based on these facts, petitions were filed alleging that Jeffrey came within the jurisdiction of the juvenile court because he had committed the following four offenses[1]: (1) battery causing serious bodily injury, Cal. Penal Code §§ 242, 243(d); (2) assault with a deadly weapon, § 245(a)(1); (3) assault by means of force likely to produce great bodily injury, § 245(a)(1); and (4) mayhem, § 203. The petition against Jeffrey included an enhancement allegation that he had personally inflicted great bodily injury. Cal. Penal Code § 12022.7(a).

After a contested jurisdictional hearing, the Contra Costa County Superior Court ("Superior Court") convicted Jeffrey of the battery charge and the mayhem charge. The Superior Court also sustained the enhancement allegation of great bodily injury. At a dispositional hearing on June 6, 2002, the Superior Court declared Jeffrey to be a ward of the court and placed him on probation under supervision of the California Youth Authority. Jeffrey appealed to the California Court of Appeal, which affirmed all findings of the Superior Court on May 29, 2003, and then petitioned for review in the California Supreme Court. That petition was summarily denied on August 20, 2003. Jeffrey filed a state habeas corpus petition with the California Supreme Court on August 3, 2004 which was denied on June 22, 2005. He filed his current petition with this court on July 29, 2004.

## II. ANALYSIS

### A.     Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition

---

[1] Stephen was charged in a separate petition with the same allegations as Jeffrey under a conspiracy theory. RT 8. The juvenile court rejected the conspiracy theory, acquitting Stephen of these charges but found him guilty of misdemeanor battery. RT 268-69. Stephen appealed to the Court of Appeals, which consolidated his case with Jeffrey's appeal and affirmed the disposition of both in an unpublished opinion. Only Jeffrey has brought this habeas action.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY—No. C-04-03081 RMW
JAS                                         3

1  challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in
2  state court unless the state court's adjudication of the claim "(1) resulted in a decision that was
3  contrary to, or involved an unreasonable application of, clearly established federal law, as
4  determined by the Supreme Court of the United States; or (2) resulted in a decision that was based
5  on an unreasonable determination of the facts in light of the evidence presented in the state court
6  proceeding." 28 U.S.C. § 2254(d).

7  In determining whether the state court's decision is contrary to, or involved an unreasonable
8  application of, clearly established federal law, a federal court looks to the decision of the highest
9  state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*,
10 217 F.3d 663, 669 n.7 (9th Cir. 2000). The AEDPA requires a district court to presume correct any
11 determination of a factual issue made by a state court unless the petitioner rebuts the presumption of
12 correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Even if a constitutional error
13 has occurred, habeas relief is warranted only if the constitutional error had a "substantial and
14 injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782,
15 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)). In other words, a habeas
16 petitioner must show that the error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637.

**B.    Analysis of Legal Claims**

   **1.    Hearsay Testimony**

Petitioner first contends that the juvenile court impermissibly relied on hearsay testimony contained in his disciplinary records. Petitioner claims that the juvenile court judge erred both in admitting the disciplinary records as evidence, but also by misleading petitioner into thinking that the judge would consider the disciplinary records only to extent they tended to support or detract from the credibility of an expert's opinion and that he would not consider their contents for their truth. Petitioner alleges that these transgressions amount to a violation of his Sixth Amendment Confrontation Clause right to be "confronted with the witnesses against him." U.S. Const. Amend. VI.

Petitioner's contention that the trial judge erred in considering the contents of petitioner's disciplinary record for their truth has some merit if, in fact, he did so. However, it is not clear that

1  he did.  Further, petitioner did not specifically object to the admission of the disciplinary records and
2  made only an objection to the reading of one specific passage.  Most importantly, the court is not
3  persuaded that petitioner was prejudiced by the admission of the records.

4  Jeffrey's disciplinary records were first referenced in the direct testimony of Dr. Robert
5  Goyer, an expert witness called by the defense.  Dr. Goyer, a school psychiatrist for the Walnut
6  Creek School District, reviewed and used the disciplinary records to assist him in coming to his
7  expert opinion on petitioner's mental and behavioral characteristics.  RT 173:19-174:1; 176:9-13.
8  Therefore, the People were entitled to cross-examine Dr. Goyer about his consideration of the
9  contents of the disciplinary records in evaluating the weight to be given his opinion.  *See* FRE 703.
10 However, the examination of an expert about facts upon which he relied or did not rely in
11 formulating his opinion does not make otherwise inadmissible facts admissible for their truth.  *Id.*

12 Nevertheless, it does not appear that petitioner objected to the admissibility of his
13 disciplinary records.  Petitioner did not object at trial on hearsay grounds when the disciplinary
14 records were marked as an exhibit nor during initial questions concerning their contents.  RT
15 205:15-210:17.  The first hearsay objection was made when June Krug, one of the vice-principals in
16 the Walnut Creek Intermediate School, after being asked on redirect examination about a particular
17 entry concerning an incident in which Jeffrey allegedly struck another boy, responded that "the
18 prinicpal said that the witnesses that she interviewed there did not support his [Jeffrey's] story."  The
19 objection appears to have been made as to Ms. Krug's relation of what the principal had said as
20 opposed to being an objection as to the admissibility of the disciplinary records as a whole.  *Id.* at
21 211:19-22.  When the disciplinary records were actually received, no objection was made. *Id.* at
22 267:9-16.

23 Petitioner argues that the trial court misled the petitioner as to how the disciplinary reports
24 would be used and that explains the lack of objection other than that which was made.  When
25 petitioner did object as set forth above, the trial court overruled the objection on the ground that the
26 information sought was relevant to the basis of Dr. Goyer's opinion.  The trial court did not suggest
27 that it was admitting the evidence for the truth of the statement that Jeffrey struck another boy or the
28 truth of what the witnesses said.

1   If petitioner's objection is treated as an objection to the admission of the disciplinary records
2   as a whole, the court's ruling was that the reports were admissible to the extent that they shed light
3   on Dr. Goyer's opinion but not as substantive evidence of the truth of the factual allegations reported
4   in the records.  However, at the close of the jurisdictional hearing in orally giving his decision on
5   guilt, the trial court cited Jeffrey's prior disciplinary record as supporting his finding that Jeffrey
6   knew the difference between right and wrong and knew that there was a liklihood that his projectile
7   would strike someone.  *Id.* at 324:3-326:20.  This suggests that the trial judge may have considered
8   the contents of the disciplinary records for more than weighing the credibility of Dr. Goyer's
9   opinion.

10   However, even if the trial judge considered the disciplinary records for substantive evidence
11   of prior misconduct by Jeffrey, the court is not persuaded that the error was prejudicial.  The trial
12   judge stated that the convictions were "based on all the facts and circumstances of the case."  *Id.*
13   Indeed, in light of the record before the trial judge, there was ample evidence to convict on the
14   battery and mayhem charges without considering the truth of the contents of petitioner's disciplinary
15   record.  The trial judge found that petitioner prepared and spat a sharp, pointy object at point-blank
16   range toward Nicholas T.  The object was launched with enough force to penetrate two inches deep
17   into Nicholas T.'s eye.  Petitioner had made projectiles in the past.  Petitioner, at 12 years of age,
18   certainly was at an age where he must have realized that he could hit someone in a crowded area
19   with a projectile.  The evidence, even without considering petitioner's disciplinary record, clearly
20   supports the conclusion that petitioner understood the wrongfulness of his conduct.  Petitioner has
21   not shown that any erroneous consideration of the disciplinary records was other than harmless
22   error.

23   **2.     Jury Trial**

24   Petitioner's second argument is that his juvenile proceeding, conducted without a jury, denied
25   him his Sixth Amendment right to a jury trial.

26   The Supreme Court has ruled that due process in juvenile delinquency proceedings does not
27   mandate a jury trial for juvenile defendants.  *McKeiver v. Pennsylvania*, 403 U.S. 528 (1971).
28   Petitioner concedes this point but argues that *McKeiver*'s holding is based on outdated assumptions

about the juvenile delinquency process that have been refuted in the years since. Specifically, petitioner argues that juvenile proceedings now resemble adult criminal proceedings in that they often involve punitive consequences and are more adversarial. Given this modern reality, petitioner asks the court to extend the right of jury trial to him, as if he were an adult criminal defendant.

Whatever the merits of petitioner's argument, Ninth Circuit law is squarely in accord with *McKeiver* in holding that there is no constitutional right to a jury trial for a juvenile. *See United States v. Male Juvenile*, 280 F.3d 1008, 1021 (9th Cir. 2002); *United States v. Juvenile*, 228 F.3d 987, 990 (9th Cir. 2000). The court is not prepared to depart from years of well-established precedent here; therefore, the court finds that petitioner was not entitled to a jury trial at his juvenile proceeding, and no attendant constitutional rights were violated.

### 3.  California Penal Code § 26 Presumption

Petitioner's final argument is that the prosecution did not provide sufficient evidence to rebut the presumption under California Penal Code Section 26 that petitioner, a minor under the age of 14, did not understand the wrongfulness of his conduct. Respondent contends that in the totality of circumstances surrounding the offenses, there was ample evidence to establish that petitioner knew what he was doing was wrong. The court agrees with respondent.

California Penal Code Section 26 reads in relevant part: "All persons are capable of committing crimes except those belonging to the following classes: One--Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness . . ." The prosecution must come forward with "clear and convincing evidence" to rebut this presumption. *In re Manuel L.*, 7 Cal. 4th 229, 238-39 (1994). "Attendant circumstances of the crime, such as its preparation, the particular method of its commission, and its concealment" are probative factors to assist the court in determining whether the prosecution has rebutted the presumption. *In re Tony C.*, 21 Cal. 3d 888, 900 (1978). Furthermore, a court can infer that the older a child gets, the more likely the child will appreciate the wrongfulness of his acts. *In re Marven C.*, 33 Cal. App. 4th 482, 487 (1995).

In this case, the record shows that petitioner committed a premeditated battery against Nicholas T. After his brother pointed Nicholas T. out from the crowd of boys, petitioner walked

over to Nicholas T., fashioned a pointy object, stuck it in his mouth, tapped Nicholas T.'s shoulder to get his attention, and then spat the object directly into Nicholas T.'s face.  This course of events clearly and convincingly shows that petitioner targeted Nicholas T.  After Nicholas T. grabbed his eye in pain, petitioner tried to escape responsibility, telling Nicholas T. not to go to a teacher.  Petitioner knew what he did was wrong, and he sought to avoid the consequences of his actions.  The court can also infer from petitioner's age at the time of the incident – 12 years and 8 months – and his prior and current preparation of objects similar to the one he spat in Nicholas T.'s eye he knew the wrongfulness of his actions.  Therefore, the trial judge did not err in finding that petitioner understood the wrongfulness of his actions.

### III. CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. § 2254 (effective December 1, 2009).  For the reasons set out in the discussion above, petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a COA is denied..

### IV.  ORDER

For the foregoing reasons, the petition for writ of habeas corpus is denied and a certificate of appealability will not be issued..

DATED:     1/4/10                              *Ronald M Whyte*
                                               RONALD M. WHYTE
                                               United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Petitioner:**

Randy Philip Montesano	rmontesano@hotmail.com

**Counsel for Respondent:**

Christopher Joseph Wei	christopher.wei@doj.ca.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 1/5/10	CCL
**Chambers of Judge Whyte**